Mr. Felix Morales was deported when he had not one but two avenues to remain in the country. The government now agrees that he was not deportable for his crimes, and yet asks this court not to maintain the finality of the immigration order, not just to permanently bar him from his wife and children, but to approve his deportation. This court in Aguilera-Rios said that the finality of immigration judgments is one thing, but the imposition of criminal sanctions on a person who should still be in the country is quite another. And because this court indulges every presumption against waiver, because the immigration judge here not only got the legal analysis wrong, but actually disguised the nature of the analysis. I have a question. Mr. Felix Morales did not exhaust his administrative remedies and appeal the IJ's 1997 determination that section 261.5 was an aggravated felony. But the government, everyone's conceding now that it is an aggravated felony, and then we also have the 212 relief. But doesn't it follow that Mr. Felix Morales cannot collaterally attack the IJ's removal order in this criminal proceeding under 8 U.S.C. section 1326 D1 and D2? I mean, isn't there more that he has to do? I would agree with the first premise, which is that he did not in fact exhaust his administrative reviews. And he didn't appeal. Our argument, that's correct, our argument is that he was excused from taking those steps because his waiver of the right to appeal was not considered an intelligent. Well, doesn't Congress put them there for a reason? I mean, we can't just write them out, can we? I mean, even if you don't like them. I understand. I think the answer to that is to say, I guess, two things. One, it's very clear under this court's case law that an individual is excused from exhausting administrative remedies and excused from exploring options of judicial review if the waiver of appeal in the immigration court was not considered an intelligent. So that's the basis of our argument here, that the waiver here was not considered an intelligent, that it could not be given that the immigration judge misadvised Mr. Felix Morales of the law that applied to his case. Well, but it was the law at the time. Okay, so how can, you know, if the judge had said at that time that 261.5 is not an aggravated felony, the judge would have been wrong at that point in time, but later... Can I take exception with that? At the time that Mr. Felix Morales appeared in immigration court, neither the BIA nor the Ninth Circuit had defined sexual abuse of a minor yet. There was nothing that bound the judge to do anything in this case, would be the first point of analysis. Okay, so how much later was the case that said it was an aggravated felony? I think it was 11 years, but it doesn't matter for two years. So the judge had to go put the card up on the head and say, I know 11 years from now it's not going to be an aggravated felony. Yeah, and there is case law that talks about immigration judges not needing to be clairvoyant. It's always said that in the context of interpreting the regulation that requires the immigration judge to advise about apparent relief. And it says, when we're talking about what the immigration judge has to do, the question is, in that context, the immigration judge does not have to decide what the law might be. In this context, however, the court in Aguilera Rio said, when we're talking about deportability, when this court says what sexual abuse of a minor is, it says what the statute has always meant, meaning that he was wrong at the time. Even if there wasn't law, there wasn't, so of course there wasn't any binding law, but even if he was wrong on the law, it wouldn't matter because that's what this court is. And just one more point, and then I'll get to your question. No, no, no. Well, I kind of, I'm just trying, I think I understand your argument at this point. But I also want to know, is Mr. Felix Morales has been deported to Mexico, right? That's correct. So would overturning his conviction affect his ability to re-enter the United States? It would not affect his ability to, because we're not talking about whether we're going to re-open. I'm just trying to understand that part of it. We're talking about the criminal sanctions that attach to his prior re-entry into the United States. But I do want to get back to one additional point, which is that in the context of waivers of appeal, this court has said that, sorry, has not said, but has held that a waiver of appeal is not considered intelligent, even where the immigration judge was wrong at the law at the time. And that's the Leon Paz case. Because when we're talking about whether a waiver of appeal is knowing and intelligent, we're not talking about whether the immigration judge was trying to trick the alien out of his nerve repair, of waiving in front of an appeal. Okay, I know what the law says on that. So then, therefore, the government is conceding that that part of it was fundamentally unfair, right? Correct. Okay, but then is that all he has to do? And you're saying yes, and they're saying no, and I'm fixed on what Congress said. Sure. Congress says you have to satisfy D-1 and D-2. This court has said you satisfy D-1 and D-2 either because you actually appealed or you're excused for some reason from appealing. That's Pilar Galan and a number of cases beyond that. So that's the point we're to here. And for that point, it doesn't matter what the immigration judge knew at the time. So let's say if he had appealed and he had exhausted his administrative remedies, then we wouldn't even have to be talking about that because he would have done everything in D-1 and D-2. If he had exhausted his administrative remedies and sought judicial review, right? But he didn't do that. So what is your best case, and I don't think there is one, but you're asking the court to do one, that what has happened here that it excuses his exhaustion and appeal requirement? I think that's Pilar Galan is the best case for that, Your Honor. But it doesn't say that exactly, right? Because what it says is when an immigration judge does not advise you of an available avenue of relief, your waiver of appeal is not considered an intelligence. But again, even if the court doesn't want to deal with that bigger question, it could rule in our favor simply by saying that the immigration judge in this case misadvised him about the nature of the inquiry. He said if you have this conviction, you are deportable. Just so I understand the record, was there a finding down below of harmlessness? Of harmlessness? Yeah. No. I mean, that it was a prejudice. Was there some sort of finding on the prejudice issue below? There was a finding on the 212C prejudice issue. On this question, on the deportability question, the law was slightly different. The judge simply found that he was deportable at the time. And so it didn't reach these other questions about administrative appeal and the waiver of judicial review. Okay. Counsel, you continue to say that the defendant's waiver is excused, but I want to be clear. Did he waive his right to appeal or seek administrative remedies, or did he just not do that? And this is another issue we raised, which is that there were four responses on the record, right? Two that I would read as saying that he said he wanted to appeal. One which is ambiguous because it says no, which in response to the judge's question seemed to say that he wanted to appeal. And then he said, I accept. And then a final one which says deport me. So in a case like this where basically it was the immigration judge took the first answer that appealed to him and said, okay, well, you've waived your right to appeal. So one of our arguments is that like Pilar Escalon and worse than Pilar Escalon, it's not clear from the record that that is actually what he intended. But to the extent he did, we believe it's excused. What do you think the immigration judge should have done in this situation? I have a laundry list. Let me talk about it, and I'll try to do it quickly. If the court had done more like what the immigration judge did in Rodriguez and Pilar Escalon explained, you know, there's, Rodriguez probably is the better case, said, you know, the Ninth Circuit has not yet defined this. The BIA has not yet defined this. I believe this is sexual abuse of a minor. But before you give up your green card, do you want to? Does the IJ need to do that? Can't he just say, you may have the right to appeal. You may have the right to seek administrative remedies. Wouldn't that be enough? I don't know that that would be enough. But, again, here I think the facts are not that. I think in this case the immigration judge had so convoluted the situation by the time, basically when he said, if you have this conviction, you are deportable, it left him, it was no longer the intentional relinquishment of a known right. Well, my concern is they're very busy. They've got a lot of cases, and I think it may be too much to ask them to go through a legal analysis for each person in front of them that, well, we haven't looked at this categorical analysis yet for this crime. We don't know what the Ninth Circuit may do in 11 years. I mean, that's asking a lot of a busy immigration judge. It does, and I have two quick responses. One is that it actually does happen all the time. There are immigration judges every day who say, and I listen to these tapes for a living, and there's plenty of cases where the judges say, you know, the 212C is retroactive. We don't know what the Supreme Court's going to say, but this circuit has said this, and this circuit has said this. Before you waive your right to appeal, it will mean you sit here for a long time, but do you want to wait and see what happens? There are also immigration judges who say, I think this is an aggravated felony. The Ninth Circuit might see it differently. Look, they do all the time. Do you want to waive your right to appeal? And by now I've forgotten what the second response was, but perhaps I'll remember it. Good morning, Your Honors. May it please the Court. Ashley All for the United States. The first two requirements of 1326D are exhaustion and the deprivation of judicial review, and I want to suggest to the Court that those prongs are at the core of the fairness protected by 1326D as well. If you look at the Supreme Court's decision in Mendoza-Lopez, Mendoza-Lopez discusses the much harsher default rule that applies criminal sanctions even if an underlying conviction is invalid. Thus, in the felon in possession context Mendoza-Lopez discusses, a felon can be convicted of being a felon in possession regardless of constitutional defects in that underlying felony. Similarly, under the collateral bar rule, the unconstitutionality of an injunction is not a defense to criminal contempt for violating it. And the reason why Mendoza-Lopez drew a distinction in this context is when there is a defect that by its nature deprives an alien of judicial review, then that judicial review must be provided later as a matter of due process. Well, okay, so in the United States v. Vidal-Mendoza, we held an IJ's failure to inform an alien of discretionary relief excuses the alien from 8 U.S.C. 1326D1 and D2's exhaustion and judicial review requirements. In this case, such as Morales, where the IJ removed an alien based on an erroneous interpretation of the law, is an alien also excused of D1 and D2? He is not, Your Honor. The reasoning for excusing aliens from D1 and D2 in failure to advise cases, I'll call them advice cases, simply don't apply here. And those reasons are laid out in Vidal-Mendoza. Most cases cite Arrieta. And they rely at their core on the alien not being informed of his apparent eligibility for relief and therefore having no meaningful opportunity to appeal it. Here, the defendant was abundantly informed of exactly the decision he's now appealing. He was advised of his right to appeal for three minutes on the record. It's a very, very thorough advisal of the right to appeal. And the finding that he was deportable was the central finding and the very well-articulated finding of the hearing. Well, he wasn't represented by an attorney at that time, was he? He was not, Your Honor. Was he told that he was entitled to have an attorney and if he wanted one, that perhaps he could be referred to an organization? Yes, he was. He was? He was. In the motion to supplement the record, defense counsel has kindly provided a transcript of parts of the hearing, including, there's actually, I believe it's an 11-minute advisal of rights at the outset of the hearing, and it included advice regarding the right to counsel. I can't remember the time stamps right now, but the time stamps, if you want to listen to it, are in the government's brief. I'm a little confused by one of the arguments that you made. Do you still contend that the IJ's failure to advise Felix Morales that he was eligible for Section 212C waiver is moot because Felix Morales was never actually removable? It sounds like you're telling us that because the IJ made two errors instead of one, both errors must be excused. I think the government certainly did not intend to waive its arguments regarding 212C, and I do apologize to the court for not being more helpful by briefing it. The government's arguments haven't changed, and they're laid out in our original briefing, and also the district court made abundant findings. Well, the district court found that the IJ's failure to advise Felix Morales that he was eligible to apply for 212C waiver was harmless, but do you now concede that Felix Morales suffered prejudice as a result of the IJ's error? Absolutely not, Your Honor. He did not suffer prejudice. But did you even get into that argument? No, and I'll explain why. I mean, at some point there are so many contrary legal fictions that one has to assume. Can you explain why you can say the defendant did not suffer prejudice when he was deported and the government admits he shouldn't have? So there are two separate issues, Your Honor. As to the advisal regarding 212C, he did not suffer prejudice because he has no plausible claim that he would have received that relief. As to the deportability claim, under Aguilar-Rios, the government concedes that there was fundamental unfairness, which includes that there was prejudice. And so we do agree that for purposes of 1326D3, for that deportability claim, that he did suffer prejudice. It's only asked to the advice claim that we contest that he did and that we would submit to the court. The district court correctly found that he suffered no prejudice. As to the mootness issue, I think mootness was not the correct word. However, I think that there are so many not just contrary legal fictions, but frankly contrary time machines that one has to assume to get to the 212C claim, that it does bend the case or controversy requirement perhaps to the point of absurdity. There's one time machine for assessment of the deportability claim where we assume that the law 11 years later, in fact, was law at the time. Switching to the 212C claim, we then have to assume that he was deportable in order for him to have to be advised of relief at all. And then, frankly, there's a third time machine, which is, in fact, 212C relief wasn't available at the time. It's only under the Supreme Court's St. Fear decision that it was, which was in 2001, so four years later. He's coming back here asking for relief because at the time that he was kicked out of the country, he was told that the offense that he committed was an aggravated felony, right? That's right. All right, and we now know that it was not an aggravated felony, right? It is. As of 2008, it is not an aggravated felony. Yeah, but it's retroactive. Yes, Your Honor. Okay, so we now know that retroactively it was not an aggravated felony. That's right. So he's just asking for another chance so he can get back here. He has his family here, right? He does have family here, Your Honor. And he would probably otherwise qualify for 212 relief. I would dispute that, Your Honor. Well, we don't know that, but if you look through those requirements, yes, I think he can make it, but some other trier might disagree. But he has a chance to get back here with his family. I think, Your Honor. And isn't that right? Your Honor, this is not about, and as defense counsel has emphasized, his ability to come back. They're more complicated than the Internal Revenue Code, aren't they? Isn't that right? I would say they're probably on par. On par, yeah. So I want people to hear this in the back of the courtroom. You know, we've had people's lives, the people's futures, their families. And we have people who are unschooled in all these technicalities. They don't have anyone to counsel them. Even if they had someone to counsel them, you know, they have these notorios out there that are corrupt. We know that, don't we? I don't know about that, Your Honor. Well, you should know that. You don't know that? You don't know about the notorios that are exploiting these immigrants? I don't, Your Honor. You don't? I don't. Well, where have you been? You know, I think there's two things raised by Your Honor's comments. One is the question of whether 1326 D-1 and 2 should be excused per se in these cases. And I think they shouldn't. And I have two cases in sight to support it. No, no, I think he ought to have a chance to come back here and let's see if he can meet the 212C requirements. He can't, Your Honor. I think that's all he's asking for. Your Honor, that's not all he's asking for. I think this case is not about his ability to come back to the United States. This case is about whether or not there are penalties that can be imposed for violating an injunction effectively, the injunction in this case being that he can't come back to the United States. And as I laid out, the default rule is much harsher than the rule imposed by 1326 D, and 1326 D admits to exceptions where someone has been deprived of the opportunity to make that claim before. This defendant was not deprived of that opportunity to make that claim before. Well, can you explain to me if, since you conceded fundamental unfairness as to the 261.5, can you explain to me just the overall consequences if that, therefore, is a per se rule that you don't have to exhaust and appeal? The consequences would be that 1326 D-1 would operate exactly like a direct appeal, which is what this Court has repeatedly said it is not designed to do. In any case where there was a legal error about deportability, someone would per se suffer no criminal consequences for violating that order, and I think that is inconsistent with a case this Court has already decided, which is the Estrada Torres case. In Estrada Torres, the alien challenged his deportability, albeit on sufficiency grounds, and claimed that it violated his due process to require him to exhaust that claim, and the Court held that it did not, and he was required to exhaust, and went on to analyze the facts of his particular waiver on the record, and then found that that waiver was, in fact, sufficient. I think Estrada Torres controls the outcome of this case, as does the Eighth Circuit opinion in Rodriguez, and I see that I have no further time. Unless the Court has additional questions, I will submit. Thank you, Your Honors. I remembered the second point, and then I want to say one thing. The second thing is to say it may be that immigration judges don't have this responsibility to do a full colloquy. This colloquy was minimal, and, again, we're not talking about whether he can get back into immigration court. We're talking about whether criminal sanctions should attach, and to say that the immigration judge can't do that in every case, not asking to reopen, just saying that criminal sanctions can't attach. Well, you say the colloquy was minimal, but counsel for the government said it was quite extensive and that we have a transcript, and I don't remember how many minutes she said that. There was about a three-minute conversation that said, where do you mail the notice of appeal? It said, how many days do you have to do it? It said whether there's a failing fee or not, right? He could have gone on and on for 20 minutes about the jurisdiction of the Board of Immigration Appeals, that there's two judges who will hear your case. Sometimes they publish, sometimes they don't. It's not the length of the colloquy, as Your Honor, who sits and hears colloquies all the time, would know. It's whether the information was conveyed, and the information that was not conveyed here was that you are being deported even though you are not deportable. The second real quick point I'll make is that the government's here saying, well, we didn't intend to waive our 212b argument, and I find it ironic that the government, who is represented by a U.S. attorney, is here saying, we didn't intend to waive, and yet it's taking such a nitpicky position on a proper, non-English speaking, non-represented alien who is appearing and being affirmatively misadvised by the immigration judge. And it just demonstrates how the waiver here was not considered intelligent. It wasn't even clear, was it, from that transcript that he knew what was going on, was it? That is our position, Your Honor. What? That is our position, Your Honor, that it's not clear that he intended to waive. All right. This matter is submitted.
judges: Bastian, Pregerson, Callahan